## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**LONQUIST FIELD SERVICE, LLC,**

      **Plaintiff,**

**v.**

      **Case No. 6:21-cv-01035-KHV-KGG**

**MITCHELL L. SORBY, P.E.; TAYLOR C. BUCK; BENNIE J. O'NEAL; and MICHAEL G. BRITTON**

      **Defendants.**

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL

Defendants Mitchell Sorby, Taylor Buck, Bennie O'Neal, and Michael Britton (collectively, "Defendants"), move for an order compelling Plaintiff Lonquist Field Service, LLC ("Lonquist" or "Plaintiff") to answer Defendants' Second Set of Interrogatories and produce documents responsive to Defendants' Second and Third Requests for Production ("RFP").

## INTRODUCTION

Defendants are former at-will employees of Lonquist. None is subject to any non-compete or other employment-restriction agreement. As a sort of substitute, Lonquist has pursued each Defendant under the theory they took "confidential" and "trade secret" information. Yet Lonquist still will not say, months later, what materials it is talking about. And despite telling the Court on multiple occasions that Lonquist possesses contracts with third parties, called Master Service Agreements ("MSAs"), that bar Defendants from receiving some unspecified information from third parties, Lonquist will not produce those agreements unless doing so is convenient to Lonquist. Unfortunately, these examples only scratch the surface of Lonquist's refusal to allow discovery, which also includes the use of boilerplate objections and hide-the-ball "subject to and

without waiving" RFP responses. The Court should overrule Lonquist's objections and compel the discovery.

## MEET-AND-CONFER CERTIFICATION

Pursuant to F.R.C.P. 37(a)(1) and D. Kan. R. 37.2, Defendants attempted to resolve these discovery disputes informally with Plaintiff. On June 2, 2021, Defendant submitted to Plaintiff an email raising inadequacies in Plaintiff's discovery responses and seeking clarifications of various responses and objections. *See* Ex. 1, Chaffee-McClure email. After many subsequent inquiries by Defendants, Plaintiff finally made a written response on July 22, minutes before the parties' scheduled meet-and-confer call. *See* Ex. 2, Grant email. The call went forward, and the parties conferred at length. Both Plaintiff and Defendants proposed various compromises that were not acceptable to the other side. For example, Defendants offered to withdraw certain Interrogatories and subparts if Plaintiff would answer the balance, but that was not acceptable to Plaintiff. Plaintiff offered to unilaterally re-write certain Interrogatories, which was not acceptable to Defendants. Although some issues were resolved, (for example, Defendants are not moving to compel responses to certain Interrogatories Plaintiff promised to answer in full at a later date) the parties are at an impasse as to the matters raised in this motion.

## LEGAL STANDARD

Under F.R.C.P. 26(b)(1), discovery is permissible on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Court construes relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 2448569, at *2 (D. Kan. June 12, 2019) (citations omitted).

Where, as here, a responding party fails to make a disclosure or permit discovery, under F.R.C.P. 37(a), the discovering party may file a motion to compel. In assessing a motion to compel, "the Court construes relevance broadly, and it will grant the motion to compel unless 'it is clear that the information sought can have no possible bearing on the claim or defense of a party.'" *Beaty v. Kansas Athletics, Inc.*, No. 19-2137-KHV, 2020 WL 1862563, at *2–3 (D. Kan. Apr. 14, 2020) (quoting *Gilbert v. Rare Moon Media, LLC*, No. 15-mc-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016)).

After the moving party satisfies its initial burden of showing the information sought could have any possible bearing on the claim or defenses at issue, "or discovery appears relevant on its face, the party resisting discovery bears the burden to support its objections." *Id.* (citations omitted); *see also Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, Nos. 08–1250–MLB–KGG, 08–2392–MLB–KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) (Once the "low burden of relevance" is established, the legal burden is on party opposing discovery request.).

"The party resisting discovery does not satisfy this burden by asserting 'conclusory or boilerplate objections' that discovery requests are irrelevant, immaterial, unduly burdensome or overly broad." *Beaty*, 2020 WL 1862563, at *3 (quoting *Ad Astra Recovery Servs.*, No. 18-1145-JWB, 2019 WL 2448569, at *2). "The objecting party must instead 'specifically show' that 'despite the broad and liberal construction afforded by the federal discovery rules,' each discovery request is objectionable." *Id.* (citation omitted). "Magistrate judges are afforded broad discretion when resolving discovery disputes." *Id.*

## ARGUMENT

**A.  Interrogatory 1: Identify the Trade Secrets and Confidential Information**

In its first Interrogatory, Defendants asked Plaintiff to, "[f]or each Defendant, identify with specificity by document title and Bates number, any trade secret or confidential information that Plaintiff contends that Defendant misappropriated." Ex. 3, Pl. Resp. to Second Set of Interrogatories at 3. This is a routine, necessary request in any trade secret case, made even more necessary in this case because Plaintiff accuses Defendants of independently misappropriating different things without specifying what each Defendant allegedly took. Defendants have turned over to Lonquist multiple hard drives and other devices that Lonquist has evaluated and that, if Lonquist's claim had any merit, would permit Lonquist to say what materials on them were supposedly trade secrets or confidential. Plaintiff must have some basis to make these accusations, and now is the time to reveal it.

In a trade secrets case, "[p]laintiffs must describe the subject matter of their alleged trade secrets in sufficient detail to establish each element of a trade secret." *MomsWin, LLC v. Lutes*, No. Civ.A. 02–2195–KHV, 2003 WL 21554944, at *6 (D. Kan. July 8, 2003) (collecting cases). As such, Lonquist "must do more than merely allege that they had trade secrets." *Id.* (collecting cases). Lonquist is required to identify the trade secrets at issue with "adequate specificity to inform [Defendants] what [they are] alleged to have misappropriated." *EMC Corp. v. OrangePoint, LLC*, No. 11-2643-JAR, 2012 WL 13019524, at *2 (D. Kan. July 31, 2012) (quoting *StorageCraft Tech. Corp. v. Symantec Corp.*, No. 2:07 cv 856 CW, 2009 WL 361282, at *2 (D. Utah Feb. 11, 2009)); *see also, e.g.*, *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1287 (S.D. Fla. 2007) ("[T]he party asserting trade secret protection must describe the allegedly misappropriated trade secrets with reasonable particularity." (citing *Del Monte Fresh Produce Co.*

*v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1324 (S.D. Fla. 2001)); *Porous Media Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598 (D. Minn. 1999) (requiring that details concerning trade secret be disclosed early in litigation).

None of Plaintiff's objections has merit. First, Plaintiff calls the request "compound" because Defendants seek: (1) the dates and persons involved with the origin, development, and modifications of the information; (2) the digital location and custodians of the information; (3) all persons who have accessed or had rights to access the information or to whom the information was otherwise disclosed; and (4) the basis for the contention that such information is proprietary and could not be determined by a person of ordinary skill. Ex. 3 at 3. Interrogatories may, of course, contain subparts. Fed. R. Civ. P. 33(a)(1); *see also Pouncil v. Branch Law Firms*, 277 F.R.D. 642, 645–46 (D. Kan. 2011) (discussing permissibility of subparts for interrogatories). As this Court has explained, "[a]n interrogatory is not necessarily objectionable, however, simply because it is compound or contains subparts. Neither the Federal Rules of Civil Procedure nor the Rules of Practice of the United States District Court for the District of Kansas prohibit compound interrogatories or subparts to interrogatories." *Zapata v. IBP, Inc.*, No. CIV.A. 93–2366–EEO, 1997 WL 50474, at *1 (D. Kan. Feb. 4, 1997).

Here, the subparts to Interrogatory 1 are entirely appropriate because each seeks basic information important to the merits of this case. *See MGP Ingredients, Inc. v. Mars, Inc.*, No. 06–2318–JWL–DJW, 2007 WL 3274800, at *3 (D. Kan. Nov. 6, 2007) (explaining issues central to a trade secret claim). Moreover, each subpart is part of a common theme: identifying Plaintiff's purported trade secrets and confidential information at issue in this matter. *See, e.g.*, *Sifuentes v. United Parcel Serv., Inc.*, No. 10-2178-RDR, 2011 WL 13301689, at *5 (D. Kan. Mar. 1, 2011) ("The court finds that defendant's interrogatories, with their implicit subparts, are directed at

eliciting details concerning common themes. Each interrogatory seeks details concerning the allegations in a specific paragraph of plaintiff's complaint or the basis of one of plaintiff's specific claim.").

Plaintiff's burden objection is just as unsubstantiated as it is dubious. *See* Ex. 3 at 3 (objecting that Interrogatory 1 is "cumulative and unduly burdensome," as well as "overbroad"). Defendants asked Lonquist to elaborate on the burden of substantiating the basis for this lawsuit, and no explanation has been forthcoming. Plaintiff need only disclose the information that substantiates its central allegations. It is Plaintiff's burden to "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. Civ.A.03–2470–CM–DJW, 2005 WL 44534, at *2 (D. Kan. Jan. 7, 2005). It has failed to do so.

Lastly, Plaintiff's objection that the question is "premature" is baffling. *See* Ex. 3 at 3. When, if not in discovery, may Defendants get an answer to this threshold question? If Lonquist learns additional or different information later, it may supplement. But that is no basis to refuse the question.

Put simply, the Court should overrule these unsubstantiated, invalid objections and compel an answer. Plaintiff should be compelled to identify its trade secrets and confidential information at issue in this case. If Plaintiff cannot identify a trade secret, it certainly should not be permitted to maintain a trade secret claim.

### B. Interrogatories 3 through 7: Details of the Trade Secret Claims

In addition to the permissible subparts to Interrogatory 1, Defendants have asked for details about each "trade secret" allegedly at issue in this trade secrets case. Interrogatories 3 through 7

ask Plaintiff to (1) identify whether each trade secret is subject to any confidentiality provisions or provisions affecting the ownership of that information [IROG No. 3]; (2) explain whether each trade secret is or has been publicly available [IROG No. 4]; (3) identify each Defendant's conduct that allegedly constituted a misappropriation of the information at issue [IROG No. 5]; (4) describe the factual and legal bases for the alleged harm to Plaintiff by the purported misappropriation [IROG No. 6]; and (5) a statement as to whether each purported trade secret is accessible to or otherwise in the possession of persons outside of Lonquist [IROG No. 7]. *See* Ex. 3 at 6–9. Just as identification of the trade secrets at issue is a fundamental issue in any purported trade secret case, so too are these follow-up matters. A trade secret claim can fail outright depending on the answers to these questions.

Indeed, these are basic elements of a trade secret claim. *See, e.g.*, *MGP Ingredients, Inc.*, 2007 WL 3274800, at *3. But Lonquist has objected to these requests, on the same boilerplate bases it objected to identifying its trade secrets in the first place in Interrogatory 1, asserting that they are cumulative, overly burdensome, overbroad, and premature. *See* Ex. 3 at 6–9. Each of these questions, however, is at the heart of the dispute and is a proper subject of discovery:

- Plaintiff has repeatedly supported its claims with the assertion that agreements with third parties restrict Defendants' use of Lonquist information. *See, e.g.*, Ex. 4, Excerpts of Feb. 23, 2021 Tr. at 4, 10, 12. At a minimum, Interrogatory 3 is key to that assertion.

- If a trade secret is publicly available, it is not a trade secret and afforded protections accordingly. It has long been the law that "[i]nformation that is public knowledge or that is generally known in an industry cannot be a trade secret." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see also Hogan Systems, Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cir. 1998) ("If the plaintiff has allowed his trade secret to fall into the public domain, he would enjoy a windfall if permitted to recover damages merely because the defendant took the secret from him, rather than from the public domain as it could have done with impunity.").Thus, Interrogatory 4 is properly tailored to formulate Defendants' defenses to the claims in this matter.

- Plaintiff asserts, but does not identify, that it has trade secrets and that Defendants have misappropriated them. But Plaintiff has thus far failed to identify, with any specificity, the

act(s) that purportedly constituted the misappropriation(s) at issue in this matter. Just as Defendants are left guessing what the trade secrets are, so too are they guessing what action (or actions) they each took that constituted a misappropriation. Interrogatory 5 is properly tailored to fill in the details to understand Plaintiff's allegations and to allow Defendants to properly build their defenses.

- For Plaintiff to recover in this matter, it must have damages from Defendants' purported misappropriation of Lonquist "trade secrets." Thus far, Lonquist has failed to identify any such harm. Accordingly, Interrogatory 6 is properly tailored to uncover information related to this most basic element of a trade secret claim.

- If Lonquist's purported trade secrets and confidential information are not only publicly available, but distributed widely among Lonquist customers, vendors, and government regulators—as Defendants contest—those distributed items are not trade secrets, or even confidential. Defendants thus request Plaintiff to identify with specificity to whom it has distributed the allegedly misappropriated trade secrets and confidential information through Interrogatory 7. Again, this is a basic request fundamental to defending a case concerning purported trade secrets and confidential information.

Each of these requests is thus not only reasonable, but also properly tailored to the parties' allegations in this matter. Plaintiff's cut-and-paste objections are unavailing for the same reasons discussed above in connection with Interrogatory 1. *See* Ex. 3 at 6–9. None of these boilerplate objections has merit, and none has been substantiated as required. *See, e.g.*, *Allianz Ins. Co.*, 2005 WL 44534, at *2.

## C.  Interrogatory 9: Identify the Documents Defendants Allegedly Copied

Separate from its trade secret allegations, Lonquist makes generalized allegations that certain "Defendants" copied important Lonquist documents that may simply be confidential or otherwise valuable. Interrogatory 9 asked Plaintiff to identify, with specificity, any document that Plaintiff contends each Defendant copied. *See* Ex. 3 at 10–11. To develop the details of these allegations, Defendants ask Plaintiff to identify (1) the substance and original source of the document, (2) the date of the purported copying, (3) persons who have access to the document or otherwise have been in possession of it, (4) whether the information is publicly available, (5) whether it is subject to confidentiality agreements or provisions, (6) the basis that the document

had economic value to Plaintiff, and (7) a quantification of damages associated with any such copying. *See id.* Like the trade secret follow-up questions, these are each fundamental questions to understand and build defenses to Plaintiff's allegations concerning Defendants' purported copying of trade secrets and confidential information.

Plaintiff once again offers, without substantiation, the boilerplate objections that the Interrogatory is cumulative, unduly burdensome, overbroad, and premature. *See* Ex. 3 at 11. For the reasons discussed above, these objections are entirely invalid at this stage of litigation. Defendants have produced every document from Lonquist that they had in their possession, custody, and control. But even if that were not the case, Lonquist's assertion that it lacks information is not a valid basis to withhold what information it does have (if any) to support its allegations against Defendants.

Plaintiff also objected that subpart 6 of the Interrogatory concerning economic value of the purportedly copied document was broad, uncertain, and unintelligible. *See id.* Subpart 6 plainly asks Plaintiff to explain "[h]ow and why the information on [the allegedly copied] document provided economic value to Plaintiff." Ex. 3 at 11. If Plaintiff is to maintain a viable action, the allegedly copied information must have economic value to Plaintiff. *See, e.g.*, *Dodson Int'l Parts, Inc. v. Altendorf*, 347 F. Supp. 2d 997, 1010 (D. Kan. 2004), *modified on reconsideration,* No. 00-4134SAC, 2005 WL 475363 (D. Kan. Feb. 1, 2005) ("[T]o be a trade secret, the information must have independent economic value . . . ."). Thus, contrary to Plaintiff's assertion that "Lonquist cannot determine the nature of the information sought," Ex. 3 at 11, the Interrogatory could not be more plainly worded—it asks Plaintiff to support, at the most basic level, its allegation that the allegedly copied information is a trade secret by identifying its economic value.

Plaintiff further objected that subparts 6 (economic value) and 7 (quantification of damages) call for expert opinion. *See id.* Once again, this objection is meritless. As this Court has explained in overruling expert-opinion objections to interrogatories:

> According to Federal Rule of Civil Procedure 33(a)(2), "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." The Court finds no valid reason to delay answering these discovery requests because of the potential for expert witness opinion. Further, "[b]ecause of the simplicity of notice pleading, Plaintiff should provide as much information as possible regarding his claims without delay and as early as required." *Johnson v. Kraft Foods North America, Inc.,* 236 F.R.D. 535, 544 (D. Kan. 2006). **Plaintiff is capable of providing a factual response based on the information currently known to him.**

*Lemaster v. Collins Bus Corp.*, No. 11–CV–2128 JTM/KGG, 2012 WL 5199738, at *2 (D. Kan. Oct. 22, 2012) (emphasis added).

The same is true here. Plaintiff cannot baldly claim it suffered damages as a result of the alleged copying of documents and then claim to be baffled by a request that it disclose facts suggesting that any documents have independent economic value, or that Lonquist suffered damages. The Court should overrule Plaintiff's objections to Interrogatory 9 and compel Plaintiff to respond.

### D. Plaintiff's Objections to the Majority of the Document Requests are Waived under Well-Settled District of Kansas Precedent

The Court need not address each of Lonquist's many RFP objections because Lonquist has waived them in multiple ways. It is well settled in this Court that committing generally to produce documents in response to RFPs, especially using boilerplate "subject to and without waiving" objections, waives objections. As this Court has discussed at length and repeatedly explained, such a practice hides the ball and frustrates discovery:

> It has become common practice among many practitioners to respond to discovery requests by asserting objections and then answering 'subject to' or 'without waiving' their objections. This practice, however, is manifestly confusing (at best) and misleading (at worse) and has no basis at all in the Federal Rules of Civil Procedure. The court joins a growing number of federal district courts in concluding that such conditional answers are invalid and unsustainable.

*Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11–2684–JWL, 11–2685–JWL, 11–2686–JWL, 2014 WL 1569963, at *2 (D. Kan. Apr. 18, 2014). Accordingly, "when a party objects to discovery but nonetheless answers 'subject to' the objection, the objection will be deemed waived." *Id.* at *3; *see also Westlake v. BMO Harris Bank N.A.*, No. 13–2300–CM–KGG, 2014 WL 1012669, *3 (D. Kan. Mar. 17, 2014); *Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No. 08–CV–2662 JAR/DJW, 2011 WL 939226, at *9 (D. Kan. Feb. 25, 2011) *objections overruled*, No. 08–CV–2662–JAR–DJW, 2011 WL 1434626 (D. Kan. Apr. 14, 2011).

Defendants made Lonquist aware of these authorities before Lonquist served its responses to the Second and Third RFPs. Lonquist, undeterred, used this hide-the-ball strategy in response to numerous RFPs, including the following Second RFPs: 1, 2, 3, 4, 5, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45, 46, 47, 48, 56, 57, 58, 60, 63, 64, 65, 66, 68, and 70. *See* Ex. 5, Pl. Resp. to Second RFPs. Plaintiff also did so in response to the third RFPs, including responses 1 through 11. *See* Ex. 6, Pl. Resp. to Third RFPs.

For its part, Lonquist contends these authorities are bad law created by bad lawyers, making compliance optional. Lonquist reports that, *so far*, it is not withholding documents responsive to many (but not all) of these RFPs, and it has proposed as a compromise it will "preserve" its objections yet produce – as it finds them – the documents it deems "relevant, non-privileged" and "responsive . . . after a good faith search." Ex. 2. Lonquist is unwilling to withdraw the objections or to make a full production.

Lonquist's position is unsatisfactory not least of all because discovery respondents are not the arbiters of what is relevant, and cannot limit their production of *responsive* documents on that basis. This practice of attempting to narrow a category of responsive documents to those "relevant" in the eyes of the producing party is prohibited.

> When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. In other words, *a party may not unilaterally withhold information or documents that are responsive to a discovery request by stating that "all relevant, non-privileged" responsive information or documents have been, or will be, produced.*

*Johnson*, 236 F.R.D. at 541 (emphasis added) (footnotes omitted).

Beyond that, Lonquist is unwilling to share the parameters of the "good faith" search it intends to conduct, providing only the assurance it will be fair. Lonquist will not say, for example, which ESI it intends to search. And, of course, Lonquist will have no occasion to produce documents it does not *search*. Discovery is supposed to be an open and cooperative exercise, not a black box. All we know about Lonquist's proposal to make a "good faith" search is that Lonquist intends to leave out certain materials that it will not disclose.

If that were not enough, during the parties' meet-and-confer phone conference, Lonquist reported that it will not withdraw these waived objections because it needs to "preserve" them. The only purpose of preserving them, of course, is to rely on them. That position simply illustrates yet another way in which Lonquist's assurance that it will produce *something* is a hollow promise.

In short, Lonquist's position boils down to this: Lonquist is free to withhold documents by (1) not searching for them (and not disclosing what it failed to search for), (2) unilaterally deeming them irrelevant, or (3) deciding later that it will stand on its objections despite promising not to. That position would not hold water even if Lonquist *had* complied with District of Kansas

precedent and preserved its objections. And because waiver occurs when a party like Lonquist tries to hide the ball with its RFP objections, the correct result could not be clearer.

To make matters simpler, Defendants are willing to agree that Lonquist has not waived a *privilege* objection, so long as Lonquist produces an appropriate privilege log containing the information required by applicable precedent. But all remaining objections should be deemed waived. Defendants thus ask that – for Second RFPs 1, 2, 3, 4, 5, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45, 46, 47, 48, 56, 57, 58, 60, 63, 64, 65, 66, 68, and 70, and Third RFPs 1-11 – the Court deem waived Lonquist's objections other than privilege and compel Lonquist to make a complete production in response to these RFPs of all responsive documents, except for any privileged documents properly logged.

### E.  Second RFP 45: Produce Plaintiff's MSAs

As previously noted, Plaintiff has put its MSAs at issue in this case. *See, e.g.*, Ex. 4. Plaintiff claims the MSAs provide that the information Plaintiff produces for its clients and is widely distributed to vendors and government regulators is nonetheless confidential and proprietary. *See id.* Second RFP 45 asked Plaintiff to produce its MSAs entered into or in effect between January 1, 2018 and the present with certain clients in order to test Lonquist's assertions. *See* Ex. 5 at 20–21.

Despite repeatedly relying on its MSAs to form the basis of the purported confidentiality of its "trade secrets," Lonquist now refuses to produce the MSAs unless it "determines" later it would be advantageous to do so. Specifically, Plaintiff objects to producing the MSAs because the request is purportedly "overbroad and not reasonably calculated to lead to the discovery of admissible evidence" on two grounds, both of which ask the Court to ignore Lonquist's allegations and pretend Lonquist pleaded a much narrower theory. Ex. 5 at 21. Lonquist complains: (1) the

RFP is allegedly "not limited to only those Master Service Agreements that governed or pertained to Lonquist's Underground Storage Division's Mid-Continent Region operations group during Defendants' employment with Lonquist" and (2) the RFP is allegedly not limited to "Master Service Agreement[s] that govern[] or relate[] to any Lonquist confidential information or trade secrets that Lonquist contends Defendants improperly misappropriated or copied and forming the basis of its claims in this litigation." *Id.* These objections, of course, are waived because, "subject to and without waiving the foregoing objections," Plaintiff agreed to produce the MSAs if it deemed it relevant and convenient to do so. *Id.* at 21–22. Specifically, Plaintiff asserted that it "reserves the right to produce any of its agreements with these entities if Lonquist determines that Defendants misappropriated or deleted any of its confidential information and/or trade secrets pertaining to or related to any of these entities." *Id.*

To the extent the Court does not deem these objections waived, they still lack merit. Either the MSAs support Plaintiff's claims or they do not. While Lonquist's description of its own allegations are a moving target, Defendants should be allowed to discover these agreements *regardless* of whether Lonquist contends Defendants did something specifically in connection with these particular third parties, and regardless of when those agreements were signed. Defendants believe the MSAs will show that documents Lonquist has been calling its "trade secrets" are in fact owned by (and paid for) third parties, consistent with industry custom. The agreements therefore are central to the viability of Lonquist's trade secrets theory. Further, the reality is that Lonquist *does* tout its agreements with third parties in support of its theory. In its Interrogatory Responses, Plaintiff states:

> Lonquist entered into agreements with its customers, vendors, and contractors that contained confidentiality provisions and insured that the exchange of information between Lonquist and the customer, vendor, or contractor did not equate to a waiver by Lonquist to its proprietary interest in the confidential information, including

trade secrets. Such agreements also include obligations by each party to use reasonable care to avoid disclosure of confidential information and to protect said information.

Ex. 3 at 5. Plaintiff should be required to produce these purported agreements to substantiate its claims and offer Defendants a meaningful opportunity to develop their defenses.

### F. Second RFPs 50 through 56 and 59: Produce Third-Party Discussions regarding Defendants and the Use and/or Disclosure of Plaintiff Information

Plaintiff has asserted that its clients know that the information Plaintiff produces for them is proprietary in nature and cannot be distributed. *See* Ex. 4. But in Defendants' experience, this is far from the truth. What Plaintiff apparently calls proprietary is actually widely shared within the industry by and among Plaintiff's clients, vendors, subcontractors, and regulators, as well as competitors, as well as publicly available through the Kansas Department of Health and Environment ("KDHE"). After Defendants resigned from Lonquist, Defendants believe that Plaintiff made a number of statements to third parties about distributing "Lonquist Information" to Defendants and their employer that should contain admissions about Lonquist's knowledge of this fact at the time and, by natural extension, knowledge of the actual limited scope of its trade secret and confidentiality rights at issue in this litigation. This discovery is targeted to determine not only what admissions Lonquist made in the course of those communications, but also the extent to which Lonquist knew, despite its allegations to the contrary, that third parties were routinely disclosing the so-called "trade secrets," all without objection by Lonquist.

Accordingly, in their Second RFPs, Defendants sought (1) "any and all communications Plaintiff had with any Person concerning Mitchell Sorby on or after January 11, 2021" [Second RFP 50]; (2) the same for Taylor Buck [Second RFP 51]; (3) the same for Bennie O'Neal [Second RFP 52]; (4) the same for Michael Britton [Second RFP 53]; (5) "communications Plaintiff had with any client, customer, contractor, vendor, regulatory agency (including but not limited to the

KDHE), or other Person concerning any Defendant on or after January 8, 2021" [Second RFP 54]; (6) the same "concerning Tiberius Energy Services, LLC on or after January 8, 2021" [Second RFP 55]; (7) the same "concerning the use and/or disclosure of any Plaintiff information on or after January 8, 2021" [Second RFP 56]; and (8) "[a]ll communications with any Person about Tiberius Energy Services, LLC or Defendants" [Second RFP 59]. Ex. 5 at 24–28. Plaintiff copied and pasted the same objections to most of these requests. But none has merit.

**Second RFPs 50, 51, 52, 53, and 59.** Plaintiff objected to each of the RFPs that seek communications concerning Defendants (*i.e.*, Second RFPs 50 through 53, and 59) and their employer, Tiberius Energy Services, LLC ("Tiberius") (*i.e.*, Second RFP 59) for the same cut-and-paste reasons. Plaintiff first asserts that "Lonquist's communications with any third party concerning [the Defendants or Tiberius] after [their] employment with Lonquist terminated are not relevant to nor reasonably calculated to lead to the discovery of any admissible evidence concerning [the Defendants'] breaches of their fiduciary duties, breach of contract, and misappropriation of Lonquist's trade secrets while employed with Lonquist." *E.g.*, Ex. 5 at 24. Lonquist also objected that the RFPs because they are "disproportional, overbroad, and unduly burdensome because the Requests are cumulative," "temporally overbroad," "seek[] documents and communications outside the relevant scope of discovery," and are "not proportional to the needs of the case." *Id.* Lonquist claims the RFPs' use of "concerning" is undefined, vague, and ambiguous, and that the RFPs seek materials protected by attorney-client privilege and as attorney-work product. *Id.* These objections should be overruled.

It is Plaintiff's burden to demonstrate that the RFPs are unduly burdensome. As is well known, a party objecting to a document request on burden must substantiate that claim with specific facts. *E.g.*, *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D.

Kan. 2002) ("[T]he party resisting discovery [has] the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."). Plaintiff has failed to do so. And "concerning" is a commonly used word that need not be defined to be plainly understood.

Moreover, in the District of Kansas, "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case will be deemed relevant." *Mann v. XPO Logistics Freight, Inc.*, No. 16-2196-CM, 2017 WL 3054125, at *1 (D. Kan. July 19, 2017) (internal quotation marks omitted). Lonquist's communications with third parties regarding Defendants *after* their resignation refute any contention of relevance or temporal overbreadth. Plaintiff's communications about Defendants are directly relevant to Lonquist's knowledge about the proprietary nature (or lack thereof) of its work product for clients. This, in turn, will refute Plaintiff's allegations of confidentiality.

Plaintiff's assertion as to proportionality equally lacks merit. A six-factor test guides the analysis of proportionality:

> Proportionality is to be determined by considering, to the extent applicable, the following six factors: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Mann*, 2017 WL 3054125, at *1.

Here, each factor weighs in favor of compelling production. First, through this litigation, Plaintiff has threatened, with unsubstantiated claims, Defendants' very livelihood. Clients hire Defendants' employer, and in turn, Defendants, to perform work that, for safety reasons, require them to review and access work previously performed by other vendors, including Lonquist. Lonquist has so broadly defined "Lonquist Information" in the course of this litigation (and have

17

thus far failed to identify any specific "trade secrets" within that broad body of "information") that its definition encompasses this work that is owned by the clients and accessed by Defendants in the ordinary course of business. Second, the amount in controversy is unknown because Plaintiff has yet to identify any specific damages – though not for lack of interest. But the injunctive relief Lonquist seeks alone would put Defendants out of work, which is no trifling value. Third, the information sought through these RFPs is exclusively within the access, custody, and control of Plaintiff. Fourth, according to the Complaint, Plaintiff is a large, very successful corporation with operations across much of the United States. This large corporation has sued four former at-will employees in their individual capacities. Further, for the reasons discussed above, communications showing that Plaintiff was aware of the limited scope of its trade secret and confidentiality rights at issue in this litigation refutes any contention of Lonquist information being "secret" or even "confidential." The discovery here could conclusively end or, at the very least, narrow the scope of this litigation, steering factors five and six heavily in favor of compelling production.

As to Plaintiff's concern regarding attorney-client privilege and attorney-work product, Lonquist need only log those documents it intends to withhold on this basis. Defendants thus ask that the Court to compel Lonquist to make a complete production in response to these RFPs with all responsive documents, except for any privileged documents properly logged.

***Second RFPs 54 and 55.*** Defendants further specifically requested in Second RFP 54 communications about any Defendant that Plaintiff had with "any client, customer, contractor, vendor, regulatory agency (including but not limited to the KDHE)," Ex. 5 at 26, and communications between Plaintiff and the same entities concerning Tiberius, Defendants' employer, *id.* at 27. Lonquist refused to produce any responsive documents for the same reasons it refused to produce any communications about Defendants and Tiberius generally: the RFPs are

purportedly outside the scope of permissible discovery, are temporally overbroad, are not proportional, and seek privileged information and attorney-work product, as well as contain an "undefined, vague, and ambiguous" use of "concerning." *Id.* at 26–27. For the reasons discussed above, none of these objections has merit. And here it is even more difficult to imagine how any communications between Plaintiff and a client, customer, contractor, or regulatory agency about Defendants and/or Tiberius could fall within the scope of attorney-client privilege or work product. Should Plaintiff produce a privilege log as it is required to do, Defendants can appropriately address such claims at that time. Defendants thus ask that the Court to compel Lonquist to make a complete production in response to these RFPs with all responsive documents, except for any privileged documents properly logged.

*Second RFP 56.* In the last RFP concerning Plaintiff's relevant communications with third parties, Defendants have requested "[a]ny and all communications Plaintiff had with any client, customer, contractor, vendor, or regulatory agency (including but not limited to KDHE) concerning the use and/or disclosure of any Plaintiff information on or after January 8, 2021," *i.e.*, after Defendants terminated their at-will employment with Plaintiff. Ex. 5 at 27. Plaintiff asserted the same objections to this RFP as it did to the communications about Defendants and Tiberius. Specifically, Plaintiff asserted that the RFP is overbroad, is not reasonably calculated to lead to discovery of admissible evidence, seeks information protected by attorney-client privilege and attorney-work product protection, and is not proportional. *Id.* at 28. This time Plaintiff did not object to the use of "concerning" but did object to the use of "information" as being undefined, vague, and ambiguous. *Id.*

As a threshold matter, for the reasons discussed above, these objections are waived. Following its objections, Plaintiff used the highly disfavored and impermissible "subject to and

without waiving the foregoing" language and agreed to "produce all non-privileged responsive communications it has had with any client, customer, contractor, vendor, or regulatory agency since January 8, 2021, concerning the use or disclosure of any Lonquist confidential information and/or trade secrets that Lonquist contends Defendants improperly misappropriated or copied and forming the basis of its claims in this litigation." *Id.* Rather than permit Lonquist to re-write the RFP, Defendants ask the Court to order Plaintiffs to produce all responsive documents, except those properly logged in a privilege log.

To the extent the Court considers the objections not waived, they still lack merit for the reasons discussed above. These communications to the enumerated entities regarding production of Lonquist confidential information and/or trade secrets are directly relevant and proportional to address Lonquist's knowledge that its allegations regarding the scope of its confidentiality provisions were not accurate. Moreover, as previously noted, "a party may not unilaterally withhold information or documents that are responsive to a discovery request by stating that 'all relevant, non-privileged' responsive in formation or documents have been, or will be, produced." *Johnson*, 236 F.R.D. at 541. Likewise unavailing, Plaintiff has being using the phrase "Lonquist information" throughout the course of this litigation to refer generally to its work product, including its purported trade secrets and/or confidential information. This RFP is thus no different. It seeks, as Plaintiff knows, communications with the relevant entities about the use and/or disclosure of Plaintiff's work product and purported confidential information and/or trade secrets. For the foregoing reasons, Defendants thus request that the Court order a full and complete production of all such responsive communications, except those properly identified in a privilege log.

## **CONCLUSION**

Lonquist filed this lawsuit, with its many theories of recovery and its many bold assertions about Defendants' alleged conduct. For months, Defendants have had to continue working in their industry under the cloud of those allegations, with little to no evidence forthcoming. Now, Lonquist claims it is too "burdensome" to explain its own theories or produce documentary evidence. The Court should reject Lonquist's objections to conducting ordinary discovery and compel complete responses and production.


Dated: July 30, 2021

/s/ Zach Chaffee-McClure
Zach Chaffee-McClure, KS #23479
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, Missouri  64108-2613
Phone: (816) 474-6550
Fax:    (816) 421-5547
Email: zmcclure@shb.com

Elisabeth A. Hutchinson (*pro hac vice*)
SHOOK, HARDY & BACON LLP
1660 17th Street, Suite 450
Denver, CO 80202-1254
Phone: (303) 285-5300
Fax:    (303) 285-5301
Email: ehutchinson@shb.com

*Attorneys for Defendants*

## <u>MEET-AND-CONFER CERTIFICATION</u>

Pursuant to Federal Rule of Civil Procedure 37(a)(1) and discussed more fully in the

instant Motion to Compel, Defendants hereby certify that on July 22, 2021, its counsel conferred

with counsel for Plaintiff via telephone in good faith and made sincere efforts to resolve the

dispute, but counsel were unable to reach an accord as to the issues presented in this Motion.


Dated: July 30, 2021

/s/ Zach Chaffee-McClure
Zach Chaffee-McClure, KS #23479
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, Missouri  64108-2613
Phone: (816) 474-6550
Fax:     (816) 421-5547
Email: zmcclure@shb.com

Elisabeth A. Hutchinson (*pro hac vice*)
SHOOK, HARDY & BACON LLP
1660 17th Street, Suite 450
Denver, CO 80202-1254
Phone: (303) 285-5300
Fax:     (303) 285-5301
Email: ehutchinson@shb.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Zach Chaffee-McClure*
Zach Chaffee-McClure